IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3020-FL

| | |
|---|---|
| ANTWAN MARQUEL ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SGT. JOHN CROLEY, DAVID ) | |
| CURRINGTON, Deputy Sheriff, and ) | |
| NEIL ELKS, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on defendants' motion to dismiss (DE 35) pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised are ripe for adjudication. For the reasons that follow, the court grants in part and denies in part defendants' motion.

**STATEMENT OF THE CASE**

On January 24, 2018, plaintiff, a state inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants John Croley ("Croley") and David Currington ("Currington"), officers with the Pitt County Sheriff's Department, used excessive force during the course of plaintiff's arrest. Plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

The court conducted its frivolity review of plaintiff's complaint on August 27, 2018, and allowed the matter to proceed. On September 21, 2018, plaintiff filed motion to appoint counsel,

---

[1] The court dismissed plaintiff's claims against formerly-named defendants Vidant Hospital and Pitt County Sheriff's Office by separate orders entered August 27, 2018, and December 10, 2018.

which the court denied. Plaintiff filed amended complaint on October 5, 2018, which the court construed as a motion to amend the complaint. On December 10, 2018, the court granted the motion to amend, and found the amended complaint survived frivolity review.

Defendants filed the instant motion to dismiss the amended complaint on December 31, 2018, arguing the complaint fails to state a claim for relief against any of the named defendants. Defendants also assert the defense of qualified immunity to the extent plaintiff seeks monetary damages. Plaintiff timely responded in opposition to the instant motion, and defendants did not file reply.

## STATEMENT OF FACTS

Plaintiff's factual allegations are set forth below in relevant part:

[On] May 23[,] 2017[,] a call came [through] 911 due to a [breaking and entering] that was being committed. The 911 caller name was Shariba Spencer. The call came [through] at 7:26:51 [a.m.] I . . . was coming off the back of the home . . . . As I [was] walking I see one sheriff car pull up to the front of the house so I take off running towards the back of the house. That's when another sheriff car pull up in the back yard so I cut towards the middle of a[n] open [field]. I hear [defendant] Currington yell[] out stop before I shoot. I try to throw the gun I had out my hand. I turn to see [where] the sheriff was at. Next thing I [know] he yell[ed] gun and tack[led] me to the ground[,] kicked me in the chest[,] cuff me [and] then [defendant] Croley run up. [Defendant] Currington [told defendant] Croley I pointed a gun at him so [defendant] Croley shoots me [three] times while [I was] on the ground in [handcuffs].

(Am. Compl. (DE 23) ¶ 8).

## DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

2

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Courts must liberally construe pro se complaints, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990).

B.  Analysis

   1.  Individual Capacity Claims

In support of their motion to dismiss, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when the plaintiff has not demonstrated a violation of a constitutional right, or the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009). The

3

court first determines whether the complaint alleges a Fourth Amendment excessive force violation against defendants Croley or Currington.

Claims of excessive force during an arrest or investigatory stop are governed by the Fourth Amendment to the United States Constitution and are analyzed under an "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). The relevant question is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). This standard mandates "a careful balancing" of Fourth Amendment rights "against the countervailing governmental interests at stake." Graham, 490 U.S. at 396.

Application of the standard is highly fact dependent; factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Courts must consider these and other factors to determine "'whether the totality of the circumstances justifie[s]' the use of . . . force given all the circumstances of the case . . . . ." Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002) (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). Where the officers deploy deadly force, the use of force is justified only if officer has "probable cause to believe that [a] suspect poses a threat of serious physical harm." Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005) (quoting Garner, 471 U.S. at 11).

Here, plaintiff alleges that defendant Currington tackled him to the ground and kicked him in the chest during the course of an arrest. Plaintiff also alleges defendant Croley shot him three times when he was on the ground in handcuffs. As defendants emphasize, plaintiff admits he was

4

carrying a firearm in his hand at some point during the pursuit. The court, however, cannot determine on this undeveloped record whether plaintiff discarded the weapon before defendants Croley and Currington deployed force. Drawing all reasonable inferences in plaintiff's favor, the court assumes plaintiff discarded the firearm before defendant Currington tackled him and that plaintiff was not resisting arrest in the moments before he was taken into custody.

Assuming plaintiff was unarmed and not resisting arrest when defendant Currington kicked and tackled him, plaintiff has stated a Fourth Amendment excessive force claim. See Bailey v. Kennedy, 349 F.3d 731, 744 (4th Cir. 2003) (holding "extensive blows and kicks used against an unarmed man were unreasonable [in violation of the Fourth Amendment], especially the use of force that continued after [the plaintiff] was bound hand and foot and lying face down on the floor"); Jones v. Buchanan, 325 F.3d 520, 531–32 (4th Cir. 2003). And if defendant Croley shot plaintiff while he was unarmed, fully restrained, and not resisting arrest, plaintiff also has stated a Fourth Amendment claim against defendant Croley. See Harris v. Pittman, __ F.3d __, 2019 WL 2509240, at *10 (4th Cir. June 18, 2019) (holding officer violated the Fourth Amendment by deploying deadly force against plaintiff when he was unarmed, lying on the ground, and did not otherwise pose a threat to officer safety).

As to the second prong of the qualified immunity analysis, defendants must establish that the right at issue was not clearly established at the time of the alleged misconduct. Pearson, 555 U.S. at 232. Here, the question is whether defendants Currington and Croley reasonably would have known, in May 2017, that their conduct in deploying force against an unarmed detainee who was not resisting the officers' efforts to arrest him would have violated the plaintiff's rights. The answer is clearly yes: "officers using unnecessary, gratuitous, and disproportionate force to seize a secured,

5

unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." See Meyers v. Baltimore Cty., Md., 713 F.3d 723, 734 (4th Cir. 2013) (citing Bailey, 349 F.3d at 744–45 and Jones, 325 F.3d at 531–32); see also Harris, 2019 WL 2509240, at *11-12 (holding that it has been clearly established in the Fourth Circuit since 2005 that "even where deadly force initially is justified by a significant threat of death or serious physical injury, a police officer may not continue to employ deadly force when the circumstances change so as to eliminate the threat").[2]

In sum, the court finds plaintiff has sufficiently alleged Fourth Amendment excessive force claims against defendants Currington and Croley, and that they are not entitled to qualified immunity at this stage of the proceedings. Accordingly, the court denies the instant motion to the extent it seeks dismissal of the plaintiff's individual capacity claims asserted against defendants Currington and Croley. Defendants may, of course, raise their qualified immunity defense at a later stage of these proceedings after further development of the record.

As to defendant Elks, plaintiff does not allege that he was personally responsible for the alleged constitutional violations, either in a supervisory capacity or otherwise. Thus, plaintiff has not alleged a viable Fourth Amendment claim against defendant Elks. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

---

[2] Plaintiff appears to allege that he was not restrained at the time defendant Currington tackled him to the ground and kicked him. However, plaintiff does need to show defendants' exact conduct has been held unlawful to survive a qualified immunity defense. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). "In other words, defendants can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was unconstitutional." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017) (internal quotation omitted). Pursuant to Meyers, Jones, and Bailey, defendants were on notice that they could not use excessive force against an unarmed detainee who was not resisting arrest. See also Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 904 (4th Cir. 2016).

violated the Constitution."). In his response to the instant motion, plaintiff appears to concede that dismissal of plaintiff's individual capacity claims against defendant Elks is appropriate. (Resp. (DE 39) at 1).

2. Official Capacity Claims

Plaintiff's amended complaint alleges claims against defendants in their official capacities. To the extent plaintiff is attempting to assert a claim pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978),[3] the amended complaint fails to allege that the constitutional violations were taken in furtherance of a county-wide policy or custom. See Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (discussing municipal liability under § 1983). While plaintiff alleges two additional instances in which Pitt County Sheriff's Department officers allegedly used excessive force during the course of an arrest, "[i]t is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Id. at 473 (quoting Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999)). Accordingly, the court dismisses plaintiff's official capacity claims.[4]

**CONCLUSION**

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss (DE 35). The court grants the motion as to plaintiff's claims against defendant Elks and plaintiff's official capacity claims, and DISMISSES such claims with prejudice. The court

---

[3] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." Monell, 436 U.S. at 690 n.55.

[4] Plaintiff does not argue that he has sufficiently alleged a Monell claim in his response to the instant motion.

denies the motion as to plaintiff's individual capacity claims against defendants Croley and Currington.

SO ORDERED, this the 2nd day of July, 2019.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge